GEORGES RINALDI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rinaldi v. Commissioner
Docket No. 1630-77.
United States Tax Court
T.C. Memo 1980-102; 1980 Tax Ct. Memo LEXIS 486; 40 T.C.M. (CCH) 62; T.C.M. (RIA) 80102; March 31, 1980, Filed *486 Held: Respondent's determination of tip income upheld. Sondra R. Harris, for the petitioner. Joan Ronder Domike, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent in his notice of deficiency determined deficiencies in petitioner's Federal income tax and additions thereto pursuant to section 6653(a) [1] as follows: Section 6653(a)
Year
Deficiency
Addition to Tax
1973
$ 1,720.45
$ 86.20
1974
2,154.61
107.73
Respondent has conceded that petitioner is not liable for the additions to tax. Respondent also revised his original determination downward to take into account the possibility of lower tips on cash sales than on charged sales. The only issue remaining for our decision is whether petitioner received unreported tip income while employed as a waiter in the amounts of $5,931.34 and $6,952.17 for the years 1973 and 1974, respectively. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached *487 thereto, are incorporated herein by this reference.
Petitioner, Georges Rinaldi, timely filed his Federal income tax returns for the taxable years 1973 and 1974. At the time he filed his petition herein, petitioner resided in Elmhurst, New York. Petitioner was employed as a waiter by La Cote Basque Restaurant (hereafter Restaurant) during 1973 and 1974. Petitioner did not maintain adequate books or records of his tip income. On his income tax returns, petitioner reported as income from the Restaurant only the amount of wages and tips shown on his W-2 form: $10,556.10 in 1973 and $11,567.25 in 1974. The Restaurant had an in-house credit card for selected customers. These customers would pay their bills with their cards and write on the back of their checks the tip that was to be given the waiters and captains.The tips were pooled and the following day one of the waiters would pick up the tip income and distribute it to the different waiters. In addition to serving food and drink on the premises, the Restaurant sold food for parties at home, baked goods to be carried out, platters of pate to be picked up by customers, and vases from the tables. The outside parties were charged *488 on regular checks of the Restaurant and handled by the maitre d'. Apparently, not all of the parties used the Restaurant's waiters. When a waiter was used at a party, however, it was the same waiter who did all of the outside parties and his tips were not pooled with the other waiters. Thus, none of the other waiters received tips from outside sales. The Internal Revenue Service agent who conducted the audit of petitioner's return could not determine frofm the Restaurant's cash receipts book or general ledger the amount of in-house sales as compared to the amount of out-of-house sales or parties. The revenue agent did not make any adjustment for out-of-house sales in his original recomputation. Based upon his conversation with the accountant and bookkeeper, however, he determined that such sales were minimal. In the statutory notice of deficiency, respondent determined petitioner's income based upon a formula derived from Restaurant records. The charged sales records of the Restaurant contained the charged tips to waiters and busboys.The percentage of charged tips to charged food and drink was computed. Next, the tip percentage thus derived for charged sales was reduced by *489 15 percent for busboys' tips. The tip percentage for waiters for charged food and drink sales was then applied to derive total waiters' tips on charged and cash food and drink sales. Total waiters' tips were compared to total waiters' salaries. The resultant tip to salary ratio was 3.5:1 for 1973 and 3.8:1 for 1974. Finally, these ratios were applied to petitioner's salary to determine his total tips. In this way respondent determined that petitioner had unreported tip income of $6,697.50 in 1973 and $7,756.71 in 1974. After the deficiency notice was issued, respondent revised his determination of the tip to salary ratio for the Restaurant in order to take into account the possibility that tips on cash sales of good and drink were lower than on charged sales. The tip percentage derived for charged sales (16.18% in 1973 and 16.23% in 1974) was reduced by approximately 1-1/2 percent to 14.50 percent to derive a tip percentage for cash sales to take into account the fact that cash tips might have been less than charged tips. The resulting tip to salary ratio was 3.3:1 for 1973 and 3.6:1 for 1974, yielding estimated unreported tip income of $5,931.34 in 1973 and $6,952.17 in 1974 *490 for petitioner. [2]
Counsel for respondent and counsel for petitioner together made a visit to the Restaurant on May 9, 1978, to inspect its books and records for 1973 and 1974 in order to determine if there was any way in which it could be determined whether the receipts from off-premise parties and take-out foods could be identified. The accountant and the bookkeeper indicated that the receipts from parties could be identified from the waiters' checkbook by the notation "party" or "ville." In this manner, several checks were *491 identified and an attempt was made to locate these checks to ascertain the actual amount so paid. Petitioner's and respondent's counsels made a thorough search but could not locate any of the checks although they had been informed by the accountant and bookkeeper that they were at least a few of them. It was impossible to tell, therefore, from the inspection to what extent these items may have been included in gross receipts. Those in charge of the books believed the amount to be very small. Short of conducting a complete audit that would require totaling all table checks to see if they equaled food and drink totals used in the formula in this case, it is not now possible to assign an amount to this item. OPINION Petitioner concedes that respondent is entitled to reconstruct his income by use of a formula. See ; . It is, of course, open to petitioner to point out areas or specific instances in which the method used by respondent fails to reflect his true income. . In this regard, petitioner *492 contends that the formula should be adjusted to account for the out-of-house cash sales for which none of the waiters received any tips. [3] Petitioner agrees with the remainder of respondent's calculations except to the extent this adjustment affects the formula. Petitioner estimates that outside sales accounted for 5 percent of total cash sales. This would amount to $42,138.15 in 1973 (5 percent of $842,763.05) and $44,103.30 in 1974 (5 percent of $882,066). This would reduce the tip-generating income from $842,763.05 to $800,624.90 in 1973 and from $882,066 to $837,963.70 in 1974, leading to a corresponding decrease in the total amount of tips, and therefore, the amount of tips received by petitioner. Petitioner *493 thus arrived at additional tip income of $5,624.86 for 1973 and $6,469.45 for 1974 compared to respondent's $5,931.34 and $6,952.17. [4]
Respondent concedes that there may have been a small amount of non-tip sales included in his recomputation such that the total amount of tips (and, therefore, petitioner's tips) are overstated. He maintains, however, first, that such amounts are de minimis and second, that there is insufficient evidence in the record to form a basis for adjusting the gross receipts to account for the non-tip sales. [5]
*494 At trial, several waiters from the Restaurant testified that the outside parties were held once or twice a month and that on two occasions the checks for two of the larger parties which were seen amounted to around $6,000 and $10,000 although most of the parties were small. Neither management personnel nor the bookkeeper of the Restaurant testified at trial, and those in charge of the books believed the amount of outside cash sales to have been very small. Because it was impossible for respondent or petitioner to tell the extent of the cash sales from their inspection of the Restaurant's records absent a complete audit, there is nothing in the record from which we can reasonably estimate the amount. The amount of cash sales, were, in any event, "very little," and we believe respondent's determination to total tip income, even including the minimal amount of non-tip sales, was reasonable. We hold that petitioner has not met his burden of proof to show respondent's calculations are in error. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, in effect during the years at issue.↩
2. The tips to salary ratio was computed as follows: ↩
1973
1974
(1) Charge sales
$575,713.60
$560,562.00
(2) Tip on charge sales
16.18%
16.23%
(3) Less 15% (busboys)
2.43%
2.43%
(4) Effective tip on charge sales
13.74%
13.80%
(5) Tips on charge sales
79,160.48
77,357.56
(6) Cash sales
842,763.05
882,066.00
(7) Tip on cash sales
14.50%
14.50%
(8) Less 15% (busboys)
2.175%
2.175%
(9) Effective tip on cash sales
12.325%
12.325%
(10) Tips on cash sales
103,870.62
108,714.63
(11) Total tips
183,031.10
186,072.19
(12) Total waiter salaries
55,212.00
51,786.00
(13) Tips to salary ratio
3.3:1
3.6:1
3. Sales from the charged outside parties that were served by a waiter were included in the tip formula even though the waiter did not pool his tips. Respondent contends that this does not distort the formula because the waiter's tips were also included in the formula and there is nothing to suggest that tips from outside parties were greater than average. We agree with respondent (assuming that the waiter's salary from the parties was also included in the formula).↩
4. Petitioner's calculations follow: ↩
Actual tips on charge
$ 79,160.48
$ 77,357.56
Actual cash sales
842,763.05
882,066.00
5% adjustment outside sales
42,138.15
44,103.30
Cash sales on which tips were
received
800,624.90
837,962.70
Tip on cash sales
14.50%
14.50%
Less 15% (busboys)
2.175%
2.175%
Effective tip on cash sales
12.325%
12.325%
Tips on cash sales
98,677.02
103,278.90
Total tips
177,837.50
180,636.46
Waiters salaries
55,212.00
51,786.00
Tips/salary ratio
3.22:1
3.48:1
Additional tip income
5,624.88
6,469.45
5. Cf. , affd. sub. nom. . We reduced respondent's formula determination because his figure for gross "tippable" sales in the coffee house in which the waitresses-taxpayers worked failed to take into account "carryout" business constituting 10 percent of the total business and upon which the waitresses received no tips.↩